# EXHIBIT 16

(In the Matter of AW DOB: 10/8/88 HOD: February 8, 2006)

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
*State Enforcement and Investigation Division*
CONFIDENTIAL
Coles B. Ruff, Jr., Due Process Hearing Officer

| | |
|---|---|
| In the Matter of Andre Walker ) <br> Date of Birth: October 8, 1988 ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ) <br> District of Columbia Public Schools ) <br> ("DCPS" or "District") ) <br> Attending School: Friendship EPCS ) <br> Respondent ) <br> _____) | IMPARTIAL DUE PROCESS <br><br> HEARING OFFICER'S DECISION <br><br> Hearing Date: January 23, 2006 <br> Record Closed: January 26, 2006 <br> Held at: 825 North Capitol St. NE <br> Washington, DC |

Counsel for Student:   Miguel Hull, Esq.
                      1220 L Street NW #700
                      Washington, DC 20005

Counsel for DCPS:     Charles McCullough, Esq.
                      Office of General Counsel
                      825 North Capitol St. NE
                      Washington, DC 20002

**JURISDICATION:**

    A Due Process Hearing was convened on January 23, 2006, at the headquarters of the District of Columbia Public Schools, 825 North Capitol Street, NE, Washington, DC 20002, in response to a hearing request submitted by counsel for the student and parent filed November 16, 2005. The record closed January 23, 2006, with the submission of written closing arguments by the parties. The hearing was conducted and this decision was written pursuant to the *Individuals with Disabilities Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17 and the *Individuals with Disabilities Education Improvement Act of 2004* (I.D.E.I.A.), the Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145, effective October 21, 1998.

**DUE PROCESS RIGHTS:**

    The parent's counsel waived a formal reading of the due process rights.

1

(In the Matter of AW  DOB: 10/8/88  HOD: February 8, 2006)

## SUMMARY OF THE RELEVANT EVIDENCE:

The Hearing Officer considered the representations made on the record by each counsel, the testimony of the witness(es) and the documents submitted in the parties' disclosures (AW 1-42 and DCPS 1-2) which were admitted into the record.[1]

## FINDINGS OF FACT:

The student has been determined to be eligible for special education and related services with a multiple disability classification of specific learning disabled (SLD) and emotional disturbance (ED). The student has attended Friendship Edison Public Charter School Collegiate Academy (Edison) during school year (SY) 2004-05 and 2005-06. The student's most recent IEP prescribes the following weekly services: 30 hours of specialized instruction and 2 hours of psychological counseling. (AW 33)

On August 24, 2005, following a conclusion by a multi-disciplinary team (MDT) that Edison was not an appropriate placement DCPS convened a placement meeting at Edison. The parent was present by telephone. Her advocate, Mr. Kevin Carter, was in person along with Edison staff and the DCPS representative Dr. Peggy Peagler. (AW 39)

After a discussion of the student's performance at Edison Dr. Peagler presented Mr. Carter with a notice of placement for the student to attend District of Columbia Alternative Learning Academy (DCALA). The parent and her advocate proposed High Road School (High Road) as a possible placement for the student. Mr. White a representative of High Road described the program for the MDT. (Mr. Carter's testimony, AW 39)

The advocate raised concerns about DCALA because of its location and the potential harm to the student attending the school because of his prior court involvement. There was no representative from DCALA available at the meeting. Dr. Peagler answered some of Mr. Carter's questions about the DCALA program. (Mr. Carter's testimony)

Dr. Peagler indicated that she was not aware of the student's court involvement and indicated she had forwarded the student's documentation to DCPS headquarters for potential placements for the student. Because of the information provided by the parent regarding the student's court involvement, the MDT agreed to delay the placement decisions to allow the parent to visit the proposed placement. (Mr. Carter's testimony, AW 39)

A Hearing Officer Determination (HOD) issued September 26, 2005, in which the parties agreed Edison would conduct a psychiatric evaluation and reconvene a MDT meeting to review the evaluation, review and revise the student's IEP and reconsider placement. (AW 10)

---

[1] The evidence that is the source of the finding of fact is noted within a parenthesis following the finding.

(In the Matter of AW  DOB: 10/8/88  HOD: February 8, 2006)

In November 2005, the MDT meeting was held at Edison. The parent was physically present along with her advocate.[2] The purpose of the meeting was to review the student's psychiatric evaluation and again determine placement. Following a review of the psychiatric Dr. Peagler informed the parent she could select between MM Washington Center and a different location of DCALA than was proposed at the August 2005 meeting. The parent again requested the student be placed at High Road and expressed concerns about the two schools DCPS proposed. (Mr. Carter's testimony)

There was no representative from either of the proposed schools present at the meeting to describe their programs. Dr. Peagler indicated that she was only authorized to present the two placements she presented and was not authorized to select High Road. (Mr. Carter's testimony)

There was no indication by Dr. Peagler that she had any personal knowledge of either of the two schools she proposed. Despite the parent's concerns raised Dr. Peagler presented a notice of placement to the DCALA campus. There was little participation by the Edison staff regarding the placement decision. The primary discussion regarding the student's prospective placement was between Dr. Peagler, the psychiatrist, the parent and Mr. Carter. (Mr. Carter's testimony)

The student has been accepted by High Road. High Road is public day school for special education students. The school has 40 total students. The student's ages range from 13 to 21 with various disability classifications. There are no more than eight students in classroom with one teacher and one teacher aide. The teachers are all certified to teach special education. There are two full time social workers and one part time to provide counseling. (Mr. White's testimony)

The student has remained at Edison based on the parent's exercise of "stay put" rights. (AW 8)

## ISSUE(S):

Did DCPS deny the student FAPE by failing to allow the parent meaningful participation in the placement decision in violation of IDEIA Sec. 614 (e)?

## CONTENTIONS OF THE PARTIES:[3]

DCPS counsel asserted the following:

---

[2] The MDT/Placement meeting notes indicate the following were present at the November 2005 meeting: Carlynn Ross, Special Education Coordinator; Rhonda Walker, Parent; Kevin Carter, Educational Advocate; Peggy Peagler, DCPS Placement Specialist; Laura Duos, Counsel for School; Deitra West, Special Education Teacher; Roxanne Dryden-Edmunds, Psychiatrist; and Cara Gafford, Geometry Teacher.

[3] These were the interpretations of the facts and the legal arguments made by the parties in their respective closing statements. These are not to be construed as either findings or conclusions of the Hearing Officer. They are included to note the Hearing Officer fully considered the arguments made by each party, not that he was necessarily was persuaded by them.

(In the Matter of AW  DOB: 10/8/88  HOD: February 8, 2006)

1. DCPS has met its regarding the parent's participation in the placement decision.
2. Administrative bodies have concluded that the requirements of adequate parental participation are met when school districts have complied with applicable provisions of 34 C.F.R. § 300.345.
3. OSEP concluded that parental participation is achieved when school districts provide timely and adequate notice of IEP/MDT meetings to parents early enough to ensure they will have an opportunity to attend.
4. Congress has purposefully left vague the persons that must be present at a placement meeting, concluding simply that, "A group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options"
5. Local school districts are given considerable leeway as to who shall be in attendance at placement meetings. *See 34 C.F.R. § 300.552(a)(1).*
6. There was a lengthy list of experienced educators, teachers knowledgeable about the student, DCPS representatives' knowledge about placement proposals, as well as parent and educational advocates knowledgeable about the student and proposals indicate that DCPS is in compliance.
7. There is no federal or local regulation that stipulates that a representative from each proposed placement (suggested by parent or school district) must be present at the MDT/Placement meeting.
8. Courts have concluded that a combination of representatives from various disciplines formed to focus the group's total expertise on the particular circumstances of an individual student need be the only composition consideration for an MDT/Placement meeting group. *See Hollenback v. Board of Educ., 1988-89 EHLR 441:281 (N.D. Ill. 1988).*
9. Mr. Carter and Dr. Peagler were knowledgeable about the proposed placements in question.
10. Dr. Peagler served as a DCPS placement specialist, the responsibilities of her position make her knowledgeable of proposed placement options. She was able to speak of the vocational and programmatic details of the proposed placements.
11. This information was more than enough to discern that the school would be able to meet the educational, vocational, and location concerns expressed by parent in the current and previous MDT/Placement meetings.
12. Placement must be specifically tailored to meet the unique educational needs of the student.
13. The proposed placement was appropriately determined because, as required by statute, it was based on consideration of the child's IEP and allows for its implementation.
14. The Department of Education opined that, "educational placements under part B must be individually determined in light of each child's unique abilities and needs, to reasonably promote the child's educational success." *See Notice of Interpretation, Appendix A to 34 C.F.R. § 300.552.*
15. The November MDT/Placement meeting notes indicate that DCPS has considered the unique needs of the student in as that it proposed a new DCALA location

4

02/09/2006 14:08 2024425556 STUDENT HEARINGS OFF PAGE 06/14
Case 1:06-cv-00275-PLF   Document 5-19   Filed 06/19/2006   Page 6 of 14

(In the Matter of AW DOB: 10/8/88 HOD: February 8, 2006)

(Senior Center as opposed to Southeast) and the additional location of MM Washington.
16. As indicated in the notes of this meeting these proposals addressed the parent's concern of location.
17. Further, the MDT/Placement meeting notes indicate that DCPS, through Dr. Peagler, proposed DCALA Senior Center because, as indicated in the students IEP, that proposed placement could accommodate the student's vocational educational needs as well as the special education needs of the student.
18. The discussion about the appropriateness of DCALA happened only after all present were able to hear and participate in a lengthy conversation about the results of the student's psychiatric evaluation.
19. The mere fact that Dr. Peagler had two possible choices and after a discussion was only then able to propose a single placement is on its face indicative of the fact that the placement decision was made only after the consideration of the student's IEP and unique needs as expressed in location and recent evaluation results. .
20. The parent's objection to DCALA and MM Washington ought not be the persuasive factor in determining the placement.
21. In *Letter to Burton* the US Department of Education concluded that parental preference can be neither the sole nor predominant factor in a placement decision. *See 17 EHLR 1182 (OSER 1991).*
22. This sentiment was echoed in *Letter to Clinton*; opining how a school system would be gravely jeopardized by acquiescence to parental beliefs or preferences about placement decisions. *See 17 EHLR 1108 (E.D. 1991).*
23. As a consequence, Petitioner's dissent should not be a factor by which a Hearing Officer should determine whether a proposed placement was properly made.
24. Indeed the only statutory factor for consideration was whether the demands of the IEP were met.
25. The standard is not whether a person from each proposed placement was available to speak, or if LEA representatives were able to answer every question or whether there was a minimum number of placement options.
26. The November MDT/Placement meeting notes show simply that the DCPS proposed placement was made with consideration of the student's IEP and additionally unique factors for this student.

The parent's counsel asserted the following:

1. DCPS has denied the student FAPE by failing to allow him, his parent, and her representative an opportunity to meaningfully participate in his placement determination.
2. Mr. Kevin Carter testified the August 24th MDT meeting began with a presentation from the Edison members of the student's academic and behavioral functioning. Dr. Peagler then handed Mr. Carter a prior notice of placement to DCALA-SE.

02/09/2006 14:08 2024425556 STUDENT HEARINGS OFF PAGE 06/14
Case 1:06-cv-00275-PLF   Document 5-19   Filed 06/19/2006   Page 6 of 14

5

(In the Matter of AW  DOB: 10/8/88  HOD: February 8, 2006)

3. Mr. Carter expressed his concerns about DCALA to which Dr. Peagler responded the decision had been made prior to the meeting by DCPS personnel "downtown" and she had no authority to offer, or approve, any other placement.
4. Dr. Peagler could not answer specific questions regarding the certifications held by the faculty and staff at DCALA-SE, nor did anyone from DCALA-SE itself participate at any time during the meeting to answer the specific questions the parent and Mr. Carter raised.
5. The parent requested High Road Upper School and the school's director of the school described the program in detail.
6. At the November 16, 2005, meeting Dr. Peagler offered two possible placements DCALA-SC and MM Washington Center.
7. DCPS did not have any staff or faculty member from either MM Washington or DCALA-SC available at the MDT meeting to answer the parent and Mr. Carter's questions regarding those schools.
8. Dr. Peagler stated she was not authorized to approve placement at High Road, but that she would forward the suggestion to DCPS staff "downtown".
9. Mr. Carter testified that neither he nor the parent have been invited to any meetings "downtown" to discuss the student's placement nor have the heard anything from DCPS in response to their request for High Road.
10. At the conclusion of the November 16, 2005, meeting Dr. Peagler issued a prior notice of placement for DCALA-SC, which did not contain any information regarding the options considered in making the placement determination and the reasons leading up to the decision itself.
11. Mr. Carter testified that during both the August and November placement meetings, he and the parent opposed the placements offered by DCPS, while the participants from Edison voiced concerns regarding the appropriateness of those placements or "stood on the sidelines".
12. Dr. Peagler was the only participant at either meeting to favor the placement ultimately chosen.
13. Pursuant to IDEIA § 614 (e); 34 C.F.R. Sec. 300.552 (a) (1) the parents have the right to meaningful participation in the placement decisions regarding their child.
14. W.G. v. Board of Trustees of Target Range School District No. 23, 960 F.2d 1479 (9th Cir. 1992) has held "in order to fulfill the goal of parental participation in the IEP process, the school district was required to conduct, not just an IEP meeting, but a meaningful IEP meeting)".
15. Speilberg v. Henrico County Public Schools, 853 F.2d 256, 258-59 (4th Cir. 1988) has held "placement must be based on the IEP, and parent's after the fact involvement in the placement decision does not satisfy the obligation to provide a meaningful opportunity to participate in the placement decision."
16. Dr. Peagler conceded at both the August 24th and November 16th MDT meetings, that prior to the meetings, she had been instructed by DCPS staff "downtown" to offer certain placements, DCALA-SE at the August 24th meeting, and DCALA-SC and MM Washington at the November 16th meeting.
17. This clearly indicates that any input by the parent or advocate at either of the meetings was not appropriately considered given that by the day of the meetings,

6

(In the Matter of AW  DOB: 10/8/88  HOD: February 8, 2006)

    DCPS personnel, who were not at either meeting, had already made crucial decisions relating to the student's placement.
18. Neither the Edison team members nor Dr. Peagler herself appear to have had any meaningful input into the placement choices offered by DCPS. Dr. Peagler seems to have been nothing more than a mouthpiece for the staff at the DCPS Central Offices.
19. According to Appendix A to 34 C.F.R. Part 300, Question 9: It is not appropriate to make IEP decisions based upon a majority 'vote.' If the team cannot reach consensus, the public agency must provide the parent with prior written notice of the agency's proposal's or refusals, or both, regarding the child's educational program, and the parents have the right to seek resolution of any disagreements *by initiating an impartial due process hearing*.
20. Likewise, the 9th Circuit held that a majority-vote rule for decision-making at IEP meetings is inconsistent with the IDEA. Instead, decision-making by consensus is the only workable approach consistent with the law. Doe v. Maher IDELR 353 (EHLR 557:353) (9th Cir. 1999). In Doe, the court considered a parent's claim that decisions at an IEP team meeting must be made by a majority vote of the individuals present at the meetings, with each individual having one vote. After noting that there was no express support for decision by majority vote —or any other system— in the IDEA, the court concluded that majority voting would be inconsistent with the law. Noting that the number of participants at an IEP team meeting is indeterminate, the court concluded that having a majority-vote rule would give parties an incentive to select participants in order to gain a numerical majority.
21. The court found that creating opportunities for such gamesmanship would defeat the intent of the IDEA to have the IEP meeting be a cooperative, non-adversarial proceeding. Moving on to consider possible alternatives to a majority-vote rule, the court in Doe selected a consensus rule as most consistent with the IDEA. The court acknowledged that it would not always be possible for parents and school districts to achieve a consensus and that this is why the law provides for due process hearings.
22. In this case, it can hardly be said that the November 16th placement to DCALA-SC was made by consensus; only Dr. Peagler, favored placement at DCALA-SC.
23. Although what constitutes a 'consensus' is not clearly defined by the court in Doe, it stands to reason that it clearly consists of more than just one person, in this case Dr. Peagler, imposing their will on the rest of the team.
24. In Honing v. Doe, 484 U.S. 305, 327 (1988), the Supreme Court of the United States concluded that the clear intent of Congress was to make parental involvement the cornerstone of the process under the IDEA.
25. In so finding, the Court stressed the importance of a parent's right to be notified of each step of a child's educational development: "Envisioning the IEP as the centerpiece of the statute's education system for disabled children, and aware that schools had all too often denied such children appropriate educations without in any way consulting the parents; Congress repeatedly emphasized through the Act the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness.

7

(In the Matter of AW  DOB: 10/8/88  HOD: February 8, 2006)

26. Accordingly, the Act establishes various procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decision they think inappropriate." Id. at 311-12. See also Burlington School Comm. v. Massachusetts Dept. of Education, 471 U.S. 359, 373 (1985); Zvi D. By Shirley D. v. District of Columbia Public Schools, 828 F. Supp. at 88-89; Nikita Petties, et. al. v. The District of Columbia Public Schools, Civil Action No. 95-0148.
27. IDEIA § 614(b)(1) and § 615 (b)(3), (b)(4), a public agency required to provide written notice to the parents concerning a proposal or refusal to change the placement of a student. Such notice must include description of options considered and reasons for accepting or rejecting such options. See also 34 C.F.R. Sec. 300.503; D.C. Mun. Regs. tit. 5 § 3024.
28. DCPS completely failed to provide written notice satisfying these requirements in the law. Nothing in the prior notice of placement to DCALA-SC or the accompanying MDT notes gives DCPS' reasons for rejecting the parent's request for placement at High Roads, an omission that results in denying the parent her right to meaningfully participate in the student's placement determination. See Exhibit AW-38.
29. DCPS denied the parent her right to meaningfully participate in the placement decision. The schools offered by DCPS had been previously chosen by staff at the "downtown" central offices; no one from the schools was available at the placement meetings to answer the parent's specific questions; the decision to place was not made by consensus; and the parent was not provided with proper written notice justifying placement at DCALA-SC.
30. As a remedy for DCPS violations the parent requests DCPS be ordered to fund the student's placement with transportation at the High Road.

**CONCLUSIONS OF LAW:**

Pursuant to 5 DCMR 3030.3 DCPS bears the burden of proof, based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the educational needs of the student.

Did DCPS deny the student FAPE by failing to allow the parent meaningful participation in the placement decision in violation of IDEIA sec. 614(e)? Conclusion: DCPS did not sustain its burden of proof.

Section 614(e) provides: "Each local educational agency or state educational agency shall ensure that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child."

Although the ideal result in a placement decision is consensus of the MDT, when there is no consensus the placement decision may be challenged by a parent in a due process hearing. That challenge may be either procedural or substantive. In this instance the parent has challenged the procedure of the placement decision.

(In the Matter of AW  DOB: 10/8/88  HOD: February 8, 2006)

The parent asserts DCPS denied the student FAPE by failing to provide the parent full participation in the placement decision, specifically that the placement was pre-determined precluding any meaningful placement discussion.

Although DCPS under D.C. Code § 38-2501 is to first place a student at a public school if the public placement appropriate, the placement has to be made on a case by case basis with careful attention to fulfill the legal requirements that the individual needs of the student govern the placement decision and that the decision include the parent. [4]

It appears based on the meeting notes the MDT discussed the student's most recent psychiatric evaluation and there was discussion of the needs of the student. However, as to the ultimate placement decision, the Hearing Officer credits Mr. Carter's testimony that Dr. Peagler conceded at both the August 24, 2005, and November 16, 2005, MDT meetings, she had been instructed by DCPS staff "downtown" to offer certain placements. Mr. Carter testified that neither he nor the parent had been included in any of the placement deliberations that apparently took place "downtown". Neither Dr. Peagler nor any other witness testified to refute the claim the placement decision was predetermined by DCPS prior to the placement meeting.

Section 614(e) clearly requires the parent be a member of any group that makes the placement decision. In this instance, based on the un-refuted testimony the placement decision was pre-determined, the Hearing Officer concludes DCPS did not comply with sec. 614(e). DCPS' failure to do so was a violation that caused harm to the student and denied FAPE.

The parent has sufficiently demonstrated the High Road can provide the student educational benefit and implement his most recent IEP. Therefore, the Hearing Officer concludes the appropriate remedy for DCPS' violation is the student's placement for the remainder of the school year at High Road.

**ORDER:**

DCPS shall immediately place and fund the student at the High Road Upper School for the remainder of SY 2005-06 and provide transportation services.

---

[4] Although the regulations under IDEIA have not been finalized the Hearing Officer referred to 42 CFR 300.501(b) and 2(c)(1) and 300.552 as guidance in reviewing DCPS compliance with Section 614(e). 34 CFR § 300.501(b) provides: (1) Each public agency shall provide notice consistent with § 300.345(a)(1) and (b)(1) to ensure that parents of children with disabilities have the opportunity to participate in meetings described in paragraph (a)(2) of this section. (2) (c) Parent involvement in placement decisions - (1) Each public agency shall ensure that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child. 34 CFR § 300.552 provides: that in determining the educational placement of a child with a disability, including a preschool child with a disability, each public agency shall ensure that -- (a) The placement decision -- (1) Is made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options; and (2) Is made in conformity with the LRE provisions of this subpart, including §§ 300.550-300.554; (b) The child's placement -- (1) Is determined at least annually; (2) Is based on the child's IEP; and (3) Is as close as possible to the child's home; (c) Unless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if non-disabled; (d) In selecting the LRE, consideration is given to any potential harmful effect on the child or on the quality of services that he or she needs; and (e) A child with a disability is not removed from education in age-appropriate regular classrooms solely because of needed modifications in the general curriculum.

9

(In the Matter of AW  DOB: 10/8/88  HOD: February 8, 2006)

## APPEAL PROCESS:

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

_____
Coles B. Ruff, Esq.
Hearing Officer
Date: February 8, 2006

Issued: __2/9/06__

(In the Matter of AW   DOB: 10/8/88   HOD: February 8, 2006)

## In the MATTER OF Andre Walker V. DCPS

## INDEX OF EXHIBITS

| EXHIBIT # | IDENTIFICATION | ADMITTED |
|---|---|---|
| AW 1-42 | Parent's Disclosures | Yes |
| DCPS 1-2 | DCPS Disclosures | Yes |
| | | |
| | | |
| | | |
| | | |
| | * A detailed list of the documents disclosed is contained in the parties' disclosure notices | |

11

(In the Matter of AW  DOB: 10/8/88  HOD: February 8, 2006)

## In the MATTER OF Andre Walker V. DCPS

## RECORD OF PROCEEDING

| DATE | DESCRIPTION |
|---|---|
| 11/17/05 | Request for Due Process |
|  | Notice of Pre-Hearing Conference (as applicable) |
| 12/1/05 | Notice of Due Process Hearing |
|  | SETS Disposition Form |
|  | Transcripts or audio tapes of hearing |

(In the Matter of AW  DOB: 10/8/88  HOD: February 8, 2006)

# INDEX OF NAMES

## In the MATTER OF Andre Walker V. DCPS

| | |
|---|---|
| Assistant Superintendent, Special Education (or Director) | |
| Special Education Coordinator | |
| School Psychologist | |
| Regular Education Teacher | |
| Speech/Language Therapist | |
| Occupational Therapist | |
| Physical Therapist | |
| Private Psychologist | |
| Child and Child's DCPS ID # or SSN (insert ID # or Case Number on each page of the HOD vice child's name) | |
| Child's Parent(s) (specific relationship) | |
| Child/Parent's Representative | Miguel Hull, Esq. Domiento C.R. Hill, Esq. |
| School System's Representative | Charles McCullough, Esq. |
| Parent's Educational Advocate | Mr. Kevin Carter |
| Director, High Road Upper School - PG County MD. | Mr. Keith White |

13